# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### HARRISON DIVISION

**UNITED STATES**                                                    **PLAINTIFF/RESPONDENT**

**V.**                              **No.  3:08-CR-30004-JLH**
                                    **No.  3:10-CV-03053**

**MANUEL HERNANDEZ**                                       **DEFENDANT/PETITIONER**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the court is the Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence

Pursuant to 28 U.S.C. Section 2255 (Doc. 17) filed June 4, 2010.  The United States of America

filed a Response (Doc. 20) on July 7, 2010.  The Petitioner has not filed a Reply and the matter is

ready for Report and Recommendation.

## I.  Background

On March 10, 2004 the Defendant was charged in the Circuit Court of Barry County,

Missouri with Trafficking in the Second Degree.  The Information alleges that he possessed more

than 150 grams but less than 450 grams of cocaine (See Exhibit A).  The Defendant entered a

plea of guilty on May 2, 2006 (See Exhibit B) and Sentence and Judgment (See Exhibit C) was

entered on May 4, 2006 sentencing the Defendant to 7 years in the custody of the Department of

Corrections.  The judgment does show that the "court retains jurisdiction for 120 days under

Section 559.115 RSMo." [1] (Id., p. 3).

The Barry Circuit Court Docket Sheet (See Exhibit D) reflects that the "Court retains

---

[1] V.A.M.S. §559.115 provides in part that a circuit court "shall have the power to grant probation to an offender anytime up to one hundred twenty days after such offender has been delivered to the department of corrections".

-1-

jurisdiction for 120 days under Section 559.115 RSMo.  Court request a report from the Missouri Board of Probation and Parole as to the defendant's behavior during incarceration and their recommendations as to whether defendant should be release on probation and if they so recommend, any specail (sic) conditions they believe should be imposed." (Id., p. 3).

The clerks docket does reflect that a court Report Investigation was filed on April 16, 2007 and an Order of Probation and Release was executed on April 27, 2007. (Exhibit E).

On May 29, 2007 a Notice to Appear was served on the Defendant by the INS contending that the Defendant was a lawful permanent resident but that he was "convicted in the 39th Judicial Circuit Court at Barry County, Missouri for the offense of Trafficking in the Second Degree "(a felony), to wit: possession of cocain, in violation of RSMo Section 195.223"[2]  (Doc. 18-1, p. 2), a warrant was issued for his arrest (Id., p. 5) and he was served on May 30, 2007. (Id., p. 5).  The Defendant was detained and on June 20, 2007, an Immigration Judge issued an order for Hernandez's removal from the United States. Hernandez was deported on June 27, 2007.

On July 25, 2007, as a result of the Defendant's deportation, the Barry County Circuit Court ordered that the period of probation was suspended and the Board of Probation and Parole was relieved of supervision until further order of the court (See Exhibit D, p. 3) and a warrant was issued for the Defendant for a Probation/Parole violation (Id., p. 4).

Just over a year later, on September 16, 2008, Immigration and Customs Enforcement agents located Hernandez in the Carroll County Jail, which is within the Western District of Arkansas. Hernandez was incarcerated there on state misdemeanor charges of Obstruction of

---

[2]The statute provides for various amounts and quantities of drugs that would be classified as a Class B felony in part as follows; (2) more than one hundred fifty grams but less than four hundred fifty grams a detectable amount of coca leaves.

Government Operations. Immigration and Customs Enforcement agents interviewed Hernandez at the Carroll County Jail, where he admitted to his identity, previous criminal conviction, and previous removal from the United States. As a result of the ICE agents investigation, Hernandez was named in a one count Indictment (Doc. 1) filed by the grand jury on October 1, 2008 charging him with illegal reentry after having been deported for an aggravated felony. Hernandez entered a plea of "guilty" to the Indictment on December 8, 2008, and was sentenced on March 2, 2009, to 33 months in prison.

Hernandez filed the current motion for relief under 28 U.S.C. § 2255 on June 4, 2010, in which he argues that his sentence should be vacated due to ineffective assistance of counsel because (a) his attorney failed to properly investigate and challenge his prior deportation and (b) he received a longer prison sentence than he otherwise would have received.

The Defendant contends that his initial removal order was entered in violation of due process because he was "coerced by the immigration officers to sign his removal (administrative removal order)" . (Doc. 18, p. 5).  The Defendant now contends that when he was arrested on the illegal reentry charge he informed his attorney that his "previous conviction was not an 'Aggravated Felony' and that his removal in 2007 had been illegally obtained."  (Id., p. 6).  He now contends his attorney was ineffective for failing to challenge the prior deportation.

## II.  Discussion

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To establish a claim of ineffective assistance of counsel, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First,

under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense) Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997)

The "deficient performance" prong of the two-part Strickland test requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 687) That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted) There are two substantial impediments to making such a showing, however. First, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). Second, "[t]here is a 'strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005)("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was deficient, the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different...a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *Rice*, 449 F.3d at 897 (internal quotations omitted) Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir. 2007)(*citing Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004)) Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not ... need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d

654, 661 (8th Cir. 1997).

**A.  Failure to challenge the classification of Aggravated Felony:**

   The Defendant contends that his conviction in Barry County, Missouri was not an

Aggravated Felony and that his attorney was ineffective for failing to challenge the prior

conviction.   The Defendant asserted in his Brief that "even though his prior conviction was for

drug possession, it was not considered as an 'aggravated felony' in the State of Missouri" (Doc.

18, p. 12) and that he was only ordered to serve 120 days in prison. (Doc. 18, p. 9).  The

Defendant misstates the charge and the sentence by the court.

   The United States Code defines the term "aggravated felony" to mean, inter alia, "illicit

trafficking in a controlled substance (as defined in section 802 of Title 21, including a drug

trafficking crime (as defined in section 924(c) of Title 18." U.S.C.A. Title 8, §1101(a)(43)(B).

The Immigration and Nationality Act (INA) lists as an "aggravated felony" "illicit trafficking in a

controlled substance ... including a drug trafficking crime (as defined in section 924(c) of title

18)," 8 U.S.C. § 1101(a)(43)(B), but does not define "illicit trafficking."  Title 18 U.S.C. §

924(c)(2) defines "drug trafficking crime" to include "any felony punishable under the Controlled

Substances Act" (CSA).  *Lopez v. Gonzales,*  549 U.S. 47, 47, 127 S.Ct. 625, 625 (U.S.,2006)

   The Notice to Appear filed by the INS stated that the Defendant was convicted of

Trafficking in the Second Degree "(a felony), to wit: possession of cocain, in violation of RSMo

Section 195.223"  (Doc. 18-1, p. 2).  The Information filed against the Defendant charged him

with Trafficking in the 2d degree and alleged that he possessed more than 150 grams but less

than 450 grams of cocaine. (See Exhibit A).

   According to the Missouri statutes the alleged criminal behavior constituted a Class B

Felony and the authorized terms of imprisonment, including both prison and conditional release terms for a class B felony under the Missouri Statutes is a term of years not less than five years and not to exceed fifteen years. *See V.A.M.S.* 558.011.

The court also notes that Missouri has a simple possession statute which states that "it is unlawful for any person to possess or have under his control a controlled substance". V.A.M.S. §195.202. Simple possession is classified as a class C felony. (Id.). In the Defendant's plea documents to the charge of Trafficking in the 2nd Degree the Defendant stated that "I kept some cocaine for someone else". (See Exhibit B, p. 2). The prosecuting authority for Barry County Missouri obviously could have charged the Defendant with possession but choose to charge him with Trafficking. It is clear that the Defendant's actions would not constitute simple possession and was properly classified as Trafficking by the Missouri circuit court.

The Defendant was sentenced to a term of imprisonment for 7 years in the Missouri Department of Corrections. (See Exhibit C). The fact that the Defendant was released on probation within 120 days after he was sentenced is not relevant to the determination of whether the Defendant was sentenced for a Aggravated Felony as defined by federal law. The Eighth Circuit has held that "[a]ny reference to a term of imprisonment ... is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment." *See U.S. v. Demirbas*, 331 F.3d 582 at 584 (*quoting Tejeda-Perez*, 199 F.3d at 982). The Defendant was release on Probation/Parole from the Missouri Department of Correction under terms and conditions and a warrant of arrest has been issued by the Barry County Circuit Court for violation of those terms. (See Exhibit D, p. 4).

The Defendant's conduct and subsequent conviction for Trafficking in the Second Degree

constituted and Aggravated Felony under federal law.

**B.  Failure to Attack previous deportation order:**

In his § 2255 motion, Petitioner essentially seeks to vacate his conviction and sentence due to his counsel's failure to collaterally attack his previous deportation in this criminal case.

The Supreme Court in U.S. v. Mendoza-Lopez held that "Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding. *See Estep v. United States*, 327 U.S. 114, 121-122, 66 S.Ct. 423, 427, 90 L.Ed. 567 (1946); *Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944); cf. *McKart v. United States*, 395 U.S. 185, 196-197, 89 S.Ct. 1657, 1664-1665, 23 L.Ed.2d 194 (1969). This principle means at the very least that where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense. *U.S. v. Mendoza-Lopez,* 481 U.S. 828, 837-838, 107 S.Ct. 2148, 2155 (U.S.Neb.,1987)

Congress modified the Mendoza-Lopez holding, and codified it, in 8 U.S.C. § 1326: In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that-- (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). *See U.S. v. Nieto-Ayala*

-8-

2005 WL 2006703, 1 (S.D.N.Y.) (S.D.N.Y.,2005)

**1) Failure to Exhaust Administrative Remedies:**

As pointed out in the Government's brief, the purpose of the exhaustion requirement is to require aliens to bring their claims in the immigration courts and in the courts of the United States before illegally returning to this country.  To this end, the Petitioner had several remedies available. He could have applied for permission to reenter the United States under 8 C.F.R. § 212.2 and sought judicial review of any adverse decision. He could have sued from outside the United States to have his deportation and removal overturned on due process grounds, and the courts, if the defendant were to prevail on his claims, could have ordered the Department of Homeland Security to parole the defendant back into the United States so he could fight his case anew, with counsel, in immigration court. *See, e.g., Walters v. Reno*, 145 F.3d 1032, 1050-51 (9th Cir. 1998); *Mendez v. INS*, 563 F.2d 956, 959 (9th Cir. 1977).  Regardless it is clear that the Defendant did not pursue any avenue of relief through the Immigration Judge or the Board of Immigration Appeals.

**(2) Depravation of Judicial Review:**

The Defendant correctly claims that, as a lawful permanent resident, he is entitled to the due process protections of the Fifth Amendment while he is in the United States and before an order of deportation is entered. *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596, 73 S.Ct. 472, 97 L.Ed. 576 (1953). In the context of an administrative deportation hearing, those protections include the right to demand the filing of written notice, obtain legal representation, examine the evidence against him, present evidence, cross examine the government's witnesses, appeal the immigration judge's decision to the Board of Immigration Appeals, and challenge the

constitutionality of removal procedures and standards. 8 U.S.C. § 1229(a); see also *United States v. Sentamu*, 212 F.3d 127, 131 (2d Cir.2000) (detailing deportation hearing procedure). A permanent resident is also exempt from the expedited removal proceedings applicable to other aliens convicted of aggravated felonies. 8 U.S.C. § 1228(b). *See U.S. v. Jauregui*, 314 F.3d 961, 962 -963 (C.A.8 (Neb.),2003)

The United States Code provides that the Attorney General shall take into custody any alien who is deportable by reason of having committed an aggravated felony when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense. 8 U.S.C.A. §1226(c)(1)(B).  The Attorney General was justified in taking the Defendant into custody when he was release from the Missouri Department of Corrections. The Defendant was entitled to a bond hearing before an IJ and, if bond had been denied, he could have appealed that decision concerning release as well as any decision by the IJ concerning deportation but chose not to do so.

The Defendant executed a Stipulated Request for Issuance of Final Order of Removal and Waiver of Appearance and Hearing ("Stipulated Request & Waiver")(See Exhibit F) on June 6, 2007. A stipulated administrative deportation is predicated on the alien's admission of alienage and deportability. It also requires an alien's waiver of the right to an administrative hearing before an immigration judge, an administrative appeal, and judicial review of the final order of deportation. Generally, these admissions and waivers must be accomplished with advice of counsel. In this instance the Defendant was represented by an attorney, Suzanne Gladney, who also served as an interpreter. (Id., p. 4).  The certification of the immigration officer provides that

-10-

"this document has been read and explained by me to the respondent in the Spanish language which the respondent understands and have provided the respondent with a complete copy of this document". (Id.)

The "Stipulated Request & Waiver" provides that at the removal hearing the Defendant "would have the right to question government witnesses, object to evidence offered by the government, offer evidence of my own, call witnesses on my behalf, and demand that the government prove by clear and convincing evidence that I am removable". (Id., p. 2)

The "Stipulated Request & Waiver" also states that the Defendant "understands that by accepting an order of removal, I cannot return to the United States legally for at least ten (10) years without special permission from the Attorney General.  If I have been convicted of an aggravated felony, I understand that I may not legally return to the United States at any time without special permission the Attorney General.  I also understand that returning without special permission from the Attorney General could result in further removal proceedings and/or criminal prosecution, and that a conviction for illegal reentry may result in the imposition of a prison sentence of up to twenty (20) years."  (Id., ¶14)

As a result of the "Stipulated Request & Waiver" executed by the Defendant the IJ signed a Decision and Order (Exhibit G) on June 20, 2007 ordering the Defendant removed  to Mexico.

The Defendant claims that "[A]s a result of the ICE agents and the pressure of having his family unattended, Petitioner signed an administrative order of deportation around the middle of June, 2007". (Doc. 18, p. 10).  The claim that the agents coerced him is that when the Petitioner stated that he wanted a hearing before and IJ that it would take between 12-24 months and that the Defendant would be in jail during that time. (Id.)  As a result of that information he contends

he signed the Stipulation.

The Defendant admits that he spoke with Ms. Gradner, his attorney, over the phone but contends that she merely "told Petitioner he was going to be deported and could never returned (sic) to the United States because his deportation was for life."  (Doc. 18, p. 10).

A court's inquiry into the voluntariness of a waiver of rights is a two-pronged analysis. *See Edwards v. Arizona*, 451 U.S. 477, 482 (1980); *Brewer v. Williams*, 430 U.S. 387 (1977). "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Garcia v. Yearwood,* 2000 WL 890863, 8 (N.D.Cal.) (N.D.Cal.,2000).

It is clear that the Defendant knew the nature of the right being abandoned.  When the Defendant was served with the Notice of Custody he checked the box acknowledging that he did request a redetermination of this custody decision by an IJ. (Doc. 18-1, p. 6).  The "Stipulated Request & Waiver" form is explicit in regards to the rights of the Defendant to have a hearing before an IJ. (Exhibit E, ¶4).  The Defendant has not contended that he did not receive a copy of the Stipulated Request or the Waiver or that he did not understand his right to a hearing before an IJ.

The Defendant's contention is that the immigration agents would not accept his contention that he was not convicted of an Aggravated Felony (Doc. 18, p. 9) and that if he insisted on a hearing it could take between 12 to 24 months to accomplish.

The Defendant does not contend that the information provided him by the ICE agents was

not accurate or truthful. The Defendant contends that it was only because of the time he would likely spend in jail contesting his deportation that he signed the administrative order of deportation.  The allegations, taken as plead, do not rise to the level of coercion and it does not establish that the Defendant's waiver was not knowing and voluntarily made.

**(3) the entry of the order was fundamentally unfair:**

In U.S. v. Rodriguez the Eighth Circuit Court of Appeals stated that "Under Mendoza-Lopez, consistent with § 1326(d), an alien must show that "(1) an error in the deportation proceedings rendered the proceedings fundamentally unfair in violation of due process," *Mendez-Morales*, 384 F.3d at 929 (quoting *Torres-Sanchez*, 68 F.3d at 230). An error cannot render the proceedings fundamentally unfair unless it resulted in actual prejudice. *Torres-Sanchez*, 68 F.3d at 230. "Actual prejudice exists where defects in the deportation proceedings 'may well have resulted in a deportation that would not otherwise have occurred.' " Id. (quoting *United States v. Santos-Vanegas*, 878 F.2d 247, 251 (8th Cir.1989))"; *U.S. v. Rodriguez*, 420 F.3d 831, 833 -834 (C.A.8 (Iowa),2005)

For the reasons previously stated it is clear that the Defendant's conviction of Trafficking in the Second Degree constituted an Aggravated Felony. The United States Code provides that any "alien who is convicted of an aggravated felony at any time after admission is deportable." (8 U.S.C. §1227(a)(2) (A)(iii).   An aggravated felony committed by an alien applying for withholding of removal is considered a particularly serious crime automatically, if the applicant was sentenced "to an aggregate term of imprisonment of at least five years." See § 1231(b)(3)(B). *Solis v. Mukasey,* 515 F.3d 832, 835 (C.A.8,2008).  The Defendant in this case was sentenced to seven years in the Missouri Department of Corrections. (See Exhibit C).

-13-

In the present case the Defendant was convicted of an aggravated felony of trafficking in cocaine and was properly deported. There is no action that the Defendant's attorney could have taken to reverse this result.  It cannot be ineffective assistance not to raise a meritless argument. *Larson v. U.S.,*  905 F.2d 218, 219 (C.A.8 (Minn.),1990)

The Defendant has failed to establish facts sufficient to satisfy any one element of 8 U.S.C. § 1326 much less all three. He failed to exhaust administrative remedies, he was not deprived of Judicial Review and there was nothing fundamentally unfair concerning the Defendant's removal from the United States. There is no showing of prejudice to the plaintiff much less that his attorney's performance was deficient. It is clear that the Defendant consented to administrative removal because he did not want to legally contest the deportation order so that he could expeditiously reenter the county illegally.

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. Section 2255, be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED July 23, 2010.

-14-

/s/ J. Marschewski

+

HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE